**TERRY MASTIN AGENCY v. U. S. GUARANTEE CO.**

No. 11476.

Circuit Court of Appeals, Fifth Circuit.

May 15, 1946.

Rehearing Denied June 3, 1946.

Jack Crenshaw and T. E. Martin, both of Montgomery, Ala., for appellants.

Fred S. Ball, of Montgomery, Ala., for appellee.

Before HOLMES, McCORD, and LEE, Circuit Judges.

LEE, Circuit Judge.

Plaintiffs, Terry Mastin and Agnes R. Mastin, comprising a partnership, the Terry Mastin Agency, filed this suit in a circuit court of Alabama to recover commissions allegedly due under a written agency contract from defendant, the United States Guarantee Company. Defendant removed the case from the state court to the court below on the grounds of diversity of citizenship. After the parties had introduced their evidence, the district judge directed the jury to render a verdict for the defendant. From the final judgment for the defendant, plaintiffs appealed.

On January 15, 1942, the Mastin-Pannell Insurance Agency contract was executed by which defendant employed the partnership of Terry Mastin and Grady Pannell as local soliciting agents of the defendant company for Montgomery and vicinity, with authority to solicit bonds on a commission basis. Plaintiffs are successors in interest to the Mastin-Pannell partnership. Paragraph 7 of that contract provides:

"7. During the continuance of this contract the Company will pay on premiums reported and paid, on bonds or policies issued effective on and after the date on which this contract shall become effective, on proposals secured by or through the Agent, as full compensation for all services and full reimbursement for all expenditures, commissions as follows:

| | |
|---|---|
| Surety | 20% |
| Fidelity Bonds | 20% |
| (Schedule & Individual Forms) | |
| Blanket Bonds | 15% |
| (Commercial Forms) | |
| Blanket Bonds | 10% |
| (Bankers & Brokers Blanket Bonds) | |
| Forgery Bonds | 20% |

"The foregoing rates will obtain except in cases where it may be mutually agreed that a different rate of commission shall be paid, or in cases where the rate of commission may be limited by regulation or law."

The plaintiffs alleged that the defendant issued four surety bonds to one Farnell Blair, written on "proposals secured by or through the Agent"; that the premiums paid on these bonds were $101,166.34; and that the defendant, under the terms of the contract, owed the Mastin-Pannell Insurance Agency 20% of the premiums or $20,233.27 as commissions and defendant had received a credit for $5,564.15. Defendant in its answer denied that the bonds were written on "proposals secured by or through Mastin-Pannell." The defendant, further, alleged that Blair, who had obtained the bonds in question, for many years had obtained his bonds through defendant's Washington, D. C., soliciting agent, a Miss Curran; that during March, 1942, Blair, in Decatur, Georgia, sent the four bonds directly to the company in New York for execution and stipulated that the commission be divided between his regular broker, Miss Curran, and the Mastin-Pannell agency, according to such division as Blair should later specify; that the New York office returned the executed bonds directly to Blair; that Blair later specified Mastin-Pannell should have $1,000 of the commission and Miss Curran should have the balance; that Blair remitted $101,166.34, the total of the premiums, to Mastin-Pannell in order that they might deduct their part of the commission of $1,000, send the balance of the commission to Miss Curran, and remit the balance of the premiums to the company; and that Mastin-Pannell was entitled to no more than the $1,000 which they have already collected.

Terry Mastin testified that in December, 1941, he took as a full partner Grady Pannell, a brother-in-law of Farnell Blair; that both Mastin and Pannell solicited Farnell Blair for a part of his bond business. Floyd Whitney, the vice-president, of defendant, testified that defendant had accepted a blanket application from Farnell Blair; that under this blanket application Blair did not make separate applications for each bond he obtained from defendant, but he merely instructed defendant direct without the intervention of an agent to write a particular bond, and he then specified the agent to be credited with the business; that the request of the contractor direct to the defendant took the place of a proposal submitted directly by the agent; and that, if Blair told the defendant's general office to credit Mastin-Pannell for the commission, the defendant paid Mastin-Pannell the commission in accordance with their contract.

On February 7, 1942, Pannell wrote Blair as to the possibility of participating in his bond business. On February 10, 1942, Blair wrote Pannell: "* * * I will make every effort to see if I cannot work out a plan whereby you can participate in some of my bond business," and "* * * I look forward to the proper opportunity of having you share a portion of my bonding business."

Grady Pannell testified that on March 14, 1942, Blair called his father and asked him to tell Pannell that, because of Pannell's illness at that time, he was going to give Mastin-Pannell part of the commission on an Indiana cantonment project. Floyd Whitney testified that on March 27, 1942, Blair's office in Decatur by telephone told Whitney that Blair was sending bonds covering the Indiana cantonment project to defendant in New York; that the office told Whitney that Blair wanted to run this business through the Mastin-Pannell agency and to effect some division of commission with Miss Curran; and that the amount of the commission was not discussed. On March 30, 1942, Whitney, in a letter to Mastin concerning his conversation with Blair's office, said that Blair wanted to run his business through the Mastin-Pannell agency and effect some division of commission between that agency and Miss Curran in Washington, and that "our Home office will charge these premiums to your account and then Blair will, I believe, instruct you as to what division of commission he wishes made." The bonds were dated March 31, 1942. On April 2, 1942, Mastin, in a letter to Whitney, inquired as to the possibility of a rearrangement with Miss Curran so as to encourage Blair to run more business through the Mastin-Pannell agency. On April 6, 1942, Whitney wrote Mastin-Pan-

nell agency and stated: "It will be in order for you to bill Mr. Blair for these premiums as outlined above and to take credit for a commission of 5½%."

Whitney testified that this letter promptly followed notification to him from defendant's office of the amount of the commission. Terry Mastin testified that the April 6 letter first informed them that the company claimed the agency was not entitled to the rate of commission provided by the contract. On May 1, 1942, defendant billed Mastin-Pannell for $104,843.12, including premiums of $101,166.34. On May 5, 1942, Mastin wrote Whitney to point out that defendant had no right to reduce appellant's contract rate of commission. On May 8, 1942, Mastin-Pannell received remittance of $101,166.34 from Blair. On May 12, 1942, Mastin-Pannell sent its check to Miss Curran for $4,564.14 as Blair directed. On May 22, 1942, Mastin sent the defendant a check for $90,000 and stated: "* * * we * * * will remit the balance as soon as the amount of commission is agreed upon."

On May 25, 1942, Whitney returned the $90,000 check with a demand for the total of the premiums less the commission of $5,564.15, stating:

"* * * The rate of commission was fixed in New York and that rate would have applied regardless of whether the premium had been charged to Miss. Curran, your agency, or any General Agent of the company. There was, of course, no thought as to Mr. Blair limiting your part of the commission.

"In the fifth paragraph of your letter of May 22nd, you advise that you will remit the balance of this premium as soon as the amount of commission is agreed upon. This would indicate that there is some question as to the amount of commission on these Columbus, Indiana bonds and since there is absolutely no question as to that commission, I am returning your check for $90,000 with the request that you send me a check for the entire premium less the commission of $5,564.15."

On May 26, 1942, in response to this demand, Mastin sent defendant a check for

$95,602.20. On direct examination Whitney testified that, when Blair's office called concerning the bonds, Whitney told it defendant would pay only a 5½% commission. On cross-examination he admitted he was not advised of the 5½% rate until several days after the conversation with Blair's office and after the bonds were actually written.

On February 10, 1942, Blair, in reply to a letter of solicitation from Pannell for some of his bond business, wrote:

"* * * While I cannot make you any definite promises, I will make every effort to see if I cannot work out a plan whereby you can participate in some of my bond business.

"I am sure that you understand and appreciate the set-up I have always had with Miss Curran and the U. S. Guarantee Company ever since I have been in business. She has always handled my bond business and has always received the entire commission, with the exception of a few projects * * *. We have never submitted a bid in the State of Alabama, however there is no reason why we could not, and certainly you would be the logical person to countersign any business we might have in the State of Alabama. I find that on most of my projects scattered all over the country that there is always some good reason at times to pass on some of the insurance business of some kind to a local agent and occasionally the U. S. Guarantee Company has on my instructions taken care of local agents.

"You may rest assured that I am going to keep all this in mind, and I look forward to the proper opportunity of having you share a portion of my bonding business."

On May 5, 1942, Blair wrote a letter to Mastin-Pannell: "For the past several weeks, or in fact, ever since I instructed Mr. Floyd G. Whitney to let you have the agency credit, the commission to be handled in accordance with my later wishes, I have now decided that you should take for yourselves the sum of $1000.00, and I want you to pass the balance of the commission—namely—$4,564.14 on to my regular insurance broker, Miss E. C. Curran, * * * Washington, D. C."

The court below directed a verdict on the theory that there was no issue of fact that should be submitted to the jury. We disagree with the ruling of the court. Article 7 of the contract between Mastin-Pannell and the defendant provided: "The foregoing rates will obtain except in cases where it may be mutually agreed that a different rate of commission shall be paid." We believe that the record discloses sufficient evidence for submission to the jury of the question whether the parties "mutually agreed that a different rate of commission shall be paid."

The jury could find that Mastin-Pannell and the defendant by their conduct mutually agreed that Mastin-Pannell was not entitled to a 20% commission on the premiums of the Blair bonds, and agreed to a different rate of commission. If so, the jury should find for the plaintiff in accordance with the amount of said agreement. As an alternative, the jury could find that Mastin-Pannell and the defendant by their conduct mutually agreed that Mastin-Pannell was not entitled to a 20% commission, but that they did not decide what rate Mastin-Pannell was entitled to. If the jury should decide the latter alternative, Mastin-Pannell would be entitled to recover from defendant on a quantum meruit basis.

Blair in his February 10, 1942, letter said that he would make an effort to see whether Mastin-Pannell could participate "in some of my bond business"; that at times he had passed on "some of the insurance business of some kind to a local agent and occasionally the U. S. Guarantee Company has on my instructions taken care of local agents"; and that he was looking forward "to the proper opportunity of having you share a portion of my bonding business." On February 25, 1942, Mastin replied to Blair that Pannell was happy over the possibility of Blair's letting them handle "some of" his business. From Blair's February 25, 1942, letter and from Mastin's reply thereto a jury could find that Mastin-Pannell had agreed that for their commission they would accept an amount other than 20% of the premiums. On May 25, 1942, Whitney, defendant's vice-president, by letter informed Mastin-Pannell to send defendant the total of the premiums less the $5,564.15 commission. From Whitney's letter a jury could find that defendant had agreed that Mastin-Pannell was entitled to a commission other than 20% of the premiums. In his letter of May 26, 1942, Mastin sent Whitney a check for the amount of the premiums less only a 5½% commission, stating:

"* * * we are enclosing our check for $95,602.20, which is in full settlement of bonds * * * of A. Farnell Blair.

"This leaves us without a leg to stand upon in arguing about additional commission on that project. However, we know that you and the Company believe in good sportsmanship—and leave the matter of additional commission on other bond premiums, in your hands."

No demand was thereafter made, and for three years the matter rested as if the incident were closed. This suit to recover the difference in the 20% and the 5½% commission was filed only a few days before the limitation period would have run.

The judge should have charged the jury on these questions: (1) Did Mastin-Pannell waive its right to a 20% commission? If not, the jury should find for the plaintiff for the full 20%. (2) Did Mastin-Pannell waive its right to a 20% commission, and agree to some other commission? If so, the jury should find for the plaintiff in accordance with the amount of said agreement. (3) Did Mastin-Pannell waive its right to a 20% commission, and fail to agree to another commission? If so, after explaining that in that event Mastin-Pannell would be entitled to recover on a quantum meruit basis, the judge should direct the jury to fix the amount of commission.

For the reasons assigned the judgment appealed from is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.